MATTHEW C. CUNNINGHAM

*v.*

ALRYAN WOOLEN MILLS.

[Decided June 20th, 1905.]

1. A chattel mortgage will cover after-acquired property only when such intention clearly appears in the instrument.

2. Where property of a corporation was placed in the hands of a receiver and the realty was expected to realize more than enough to pay a mortgage thereon, and the receiver expended money in care of it while endeavoring to find a bidder, but on a sale it did not realize enough to pay the mortgage debt, the mortgagee should not be required to contribute to the general fund of the estate the amount spent for repairs.

On petition for distribution.

*Mr. James Buchanan,* for Barker Gummere, Jr., receiver.

*Mr. Sherrerd Depue,* for Frederic G. Lee, mortgagee.

*Mr. Alan H. Strong,* for the Trenton Trust and Safe Deposit Company.

*Mr. Frank S. Katzenbach, Jr.,* for the labor claimants.

BERGEN, V. C.

This contest arises over the proper distribution of funds reported by the receiver in his hands for that purpose. The claimants are the Trenton Trust and Safe Deposit Company, Frederic G. Lee and numerous employes of the insolvent corporation. For the purpose of considering the question raised, the moneys may be divided into three different funds—*first,* $1,809.95, the proceeds of the sale of certain chattels which were subject to the lien of a chattel mortgage held by the Trenton Trust and Safe Deposit Company, which it is admitted should go to the trust company, unless under the claim advanced for the employes they have an equitable right to have it, or some portion of it, applied towards the satisfaction of their claims; *second,* $1,994.01, representing the proceeds of the manufacture of goods from materials on hand when the receiver took possession, which sum is now claimed by Frederic G. Lee, under a chattel mortgage held by him; *third,* the residue of the fund, which it is conceded goes to the employes.

Mr. Lee does not contest the priority of the trust company mortgage, or its right to be paid the $1,809.95, but insists that, although all of the material represented by the $1,994.01 was purchased by the insolvent corporation and brought on the premises after the making of his mortgage, nevertheless, according to its terms, such after-acquired property is subject to the lien thereof. This claim is disputed by the labor claimants and its determination must depend upon the construction to be given to the mortgage, which covers not only the real estate and machinery, but is also a chattel mortgage on certain of the personal property of the company. The due execution and

recording of this instrument, both as a real estate and chattel mortgage, is admitted, and the fact that the personal estate, the proceeds of the sale of which is sought to be held, was acquired after such execution and registry, is so completely proven that counsel for Mr. Lee made no contest in that regard, and based his argument upon the existence of such conditions. The mortgage, after describing the real estate, pledged the running gear, tools, implements and "working stock" of the woolen mills "now upon said premises, and everything thereon pertaining or in any way belonging to the said mills and the business of the same." From these words it is urged that the parties contemplated that after-acquired materials became subject to the lien of the mortgage as effectively as if the instrument had by its terms expressly so stated, and that such inference is properly to be drawn because the class of personal property the subject of this investigation was likely, in the ordinary course of business, to be converted into manufactured product, and that product to be sold before the maturity of the mortgage, and consequently would be of no substantial importance as a security unless all materials after acquired for the purpose of manufacture should be made subject to the lien of the mortgage. It is claimed that this contention is supported by the determination of the court in *Johnston* v. *Morrow,* 60 *Mo.* 339, but I do not so read that case, for there the mortgage was to be a lien "on all buildings, mill and machinery in said mill, until said notes are paid," and the court held that additional machinery introduced for convenience and profit, or to replace parts broken and worn out, were subject to the lien of the mortgage because its terms were sufficiently comprehensive to include all the machinery in the mill when the notes became due.

In the case we are considering, the words "and everything thereon pertaining or in any way belonging to the said mills, and the business of the same," must be read in connection with the next preceding words, "now upon said premises." Nevertheless, if this construction be too narrow, I am unable to discover in the language used any intention to extend the lien of this mortgage to after-acquired property. The power of extending a chattel mortgage to personalty thereafter to be

acquired is well settled; on the other hand, the intention to exercise such a power or right should be clearly manifested by the instrument used for that purpose. In *Williamson* v. *New Jersey. Southern Railroad Co., 29 N. J. Eq. (2 Stew.) 311, 320*, Mr. Justice Depue, speaking for the court of errors and appeals, said: "In equity, a mortgage of personal property afterwards to be acquired by the mortgagor attaches to the property as soon as it is acquired by the mortgagor, * * * but this doctrine is founded on the maxim that equity considers that to be done which ought to be done, and is applicable only where the contract of the mortgagor to transfer to the mortgagee the after-acquired property is such as, under the circumstances, would be the subject of a decree for specific performance."

If the mortgage contains an express stipulation that it shall be a lien upon after-acquired property, persons dealing with the mortgagor would be bound to take notice that the chattels they were selling to the mortgagor would, upon coming to his possession, be subject to the lien of such mortgage, but certainly it cannot successfully be contended that this mortgage gave notice of any such condition.

My conclusion is that this mortgage does not apply to after-acquired property, and that the mortgagee is not entitled, by virtue of it, to any preference in the distribution of the fund resulting from the sale of that class of property, and that the $1,994.01 is held by the receiver free and discharged from any such lien. But the labor claimants also insist that as the receiver has expended more than $1,809.05 in the care of the real estate, which at the sale thereof did not realize a sufficient sum to pay the mortgage debt due the Trenton Trust and Safe Deposit Company, therefore the trust company should be required to contribute at least that amount to the general fund of the estate, the claim being that as large sums have been taken to preserve the real estate from waste, which alone inured to the benefit of the mortgagee, it is inequitable to cast the entire cost of maintenance and care of the real estate upon the labor claimants, it being admitted that this addition to the general fund will not make it sufficient to pay the preferred claims of the employes.

The argument, it seems to me, rests upon false premises. The property was preserved, not for the mortgagee alone, but for all of the creditors of the estate, general as well as preferred. The property was a large one and supposed to be of great value, and with an allowance for all reasonable depreciation was expected to realize a sum sufficient not only to pay the mortgage indebtedness and the labor claims in full, but a considerable portion, if not all, of the general indebtedness of the company. The receiver made divers efforts to sell at public auction, but for a long time was unable to secure any bidders. Under the theory of these claimants it became the receiver's duty to abandon the property and make no effort to realize anything from it. Such a course would not have met with the approval of any of the parties in interest. The receiver exercised his judgment in a way which I deem was reasonable and businesslike. His possession was the possession of the court, and during all the time he was carrying the property and endeavoring to sell it, anyone of these claimants was entitled to apply to the court and object to the further holding of the property. Having stood by and tacitly acquiesced in the conduct of the receiver, in the hope, as I believe, that the receiver's expectations would be realized and they thereby benefited, I do not think it would be equitable to now deprive this mortgagee of a fund, the direct result of the sale of property subject to its mortgage, and I will therefore advise the payment of the $1,809.95 to the company. Upon presentation of a decree drawn in accordance with the views here expressed, I will advise it.